(No. 17403.—Judgment reversed and award set aside.)
THE PITTSBURGH COAL COMPANY OF ILLINOIS, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(VIOLET BERG, formerly widow of Mark Kelley, Defendant in Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*employee not entitled to compensation for injury received in work outside of employment.* The Compensation act imposes no liability for injuries to a workman unless he is at the time of the injury engaged in the performance of some duty for which he was employed, and the act does not apply if he voluntarily and without his employer's direction or acquiescence undertakes work for which he was not employed and is injured while so engaged.

2. SAME—*when death of employee occurs in work outside of his employment.* A night watchman of a coal company operating a coal dock voluntarily engages in work outside of his employment where he assists steamers of a transit company in passing through a slip around another dock by handling a tow line thrown out from the steamer, and his death caused by being caught in the rope while performing such service does not arise out of and in the course of his employment by the coal company, although the coal company's foreman, who had personally contracted to do such work for the transit company, requested the deceased to do the work whenever he, the foreman, was not present, the deceased being paid in such case by the foreman's endorsement of the transit company's check.

3. PRINCIPAL AND AGENT—*agent's authority is confined to scope of the business.* The exercise of an agent's authority, however broad it may be, must be confined to the scope of the business which is conducted.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

WILSON, MCILVAINE, HALE & TEMPLETON, J. F. DAMMANN, JR., and L. S. HARDIN, of counsel,) for plaintiff in error.

. JACOB S. COOK, and FRANK T. SHARP, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Violet Kelley filed an application with the Industrial Commission for the adjustment of her claim for compensation, which she charged arose out of an accidental injury, resulting in death, suffered on January 9, 1925, by her husband, Mark Kelley, while he was employed by the Pittsburgh Coal Company of Illinois and the Graham & Morton Transit Company. On the hearing before the arbitrator the application was amended by adding the Goodrich Transit Company as a respondent. The arbitrator found that Mark Kelley, the decedent, and the Pittsburgh Coal Company of Illinois, were on January 9, 1925, operating under the provisions of the Workmen's Compensation act; that on that day the decedent sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given and claim for compensation made upon the coal company within the time required by the act; that the earnings of the decedent during the year preceding the injury exceeded $1456 and that his average weekly wage was in excess of $28; that he left surviving as his sole dependent, Violet Kelley, his widow; that she was entitled to $14 per week for 267-6/7 weeks, as provided by paragraph (*a*) of section 7 of the act as amended, for the reason that the injuries sustained caused the death of Kelley, and that the Graham & Morton Transit Company and the Goodrich Transit Company were

not liable for compensation. The award of the arbitrator was affirmed by the Industrial Commission. On review by writ of *certiorari* the circuit court confirmed the decision of the commission. This court allowed the coal company's petition for a writ of error, and the record is here for a further review.

On January 9, 1925, the Pittsburgh Coal Company of Illinois operated a coal dock situated between the north bank of the Chicago river, near its mouth, and a parallel street known as East North Water street, in the city of Chicago. The company's dock had a river frontage of about 600 feet and ran over 300 feet north to the street. A short distance east of the dock a slip extended north from the river to a point beyond East North Water street and then turned west at right angles for about half a mile to the docks of the Goodrich Transit Company. This slip was known as the Ogden or Lighthouse slip. Between the river and the slip East North Water street was approximately 40 feet wide. North of this street, and bounded on the east and north by Ogden slip, was the dock of the Coated Board Company. The Pittsburgh Coal Company was engaged in the business of supplying coal to steamboats in and about the Chicago harbor. Coal was delivered to vessels at the company's dock and also at other docks and places on the river and harbor by means of lighters. Among the coal company's customers were the Graham & Morton Transit Company and the Goodrich Transit Company, both of which operated steamboats between Chicago and ports on Lake Michigan. The boats of the Goodrich Transit Company were supplied with coal at their docks and never at the dock of the coal company. At the time of his death Mark Kelley had been employed by the Pittsburgh Coal Company about five years, first as a laborer, later as a fireman and finally as a night watchman. As watchman he was on duty from six o'clock in the evening until six o'clock of the following morning. George Hallock, who had been employed by the coal com-

pany for twenty-six years, was Kelley's foreman. The boats of the Goodrich Transit Company in going to and from their docks at the west end of Ogden slip were required to turn the corner in the slip. This turn was made with difficulty when there was a strong wind from the west or south. To make the turn more readily under such conditions a line was thrown from the passing vessel to a man on the dock of the Coated Board Company and he would fasten the line to a hook on the dock. He was signaled of the approach of the vessel by the blowing of its whistle. Usually this occurred two or three times a week. An officer of the Goodrich Transit Company had made an arrangement with Hallock, the foreman of the coal company, more than a year prior to Kelley's death, to catch and handle the line for its steamers as they turned the corner of the slip. The Goodrich Transit Company paid Hallock, by its check, six dollars per month for this service. When Hallock was otherwise engaged he would ask some person to handle the line in his stead. At times he requested Kelley to do the work, and whenever Kelley performed it Hallock would endorse and deliver the Goodrich Transit Company's check to him. Kelley had done the work for about four months at the time of his death. The coal company was not a party to the agreement between Hallock and the Goodrich Transit Company and the service was performed on the dock of the Coated Board Company. On the evening of January 9, 1925, Kelley reported for duty as usual at the coal company's dock. Shortly after seven o'clock he received the signal from the Goodrich Transit Company's steamer *Wisconsin,* bound for Racine and Milwaukee. It was dark and he proceeded with a lantern to the Coated Board Company's dock. A line was thrown from the steamer, but it was found that it would not be needed, and the master ordered that it be hauled aboard. When it was reported to him that the line was aboard the steamer was started. A call for help immediately followed and the en-

gine was stopped. As the boat slowed down another call for help was heard, and Kelley was found with the line around his left ankle hanging outside the boat with his head downward. Apparently he had stepped into the coil of the line and as it was hauled in he was thrown into the water. He was pulled aboard the steamer. The United States coast guard station crew saw the *Wisconsin* stop at the entrance to the slip and heard the cry that a man was overboard. One of its boats was launched and drew alongside the *Wisconsin*. It was thought by those on the steamer that the coast guard crew was better equipped to revive him. Accordingly Kelley was lowered into the lifeboat and taken to the coast guard station, where an attempt was made to resuscitate him, but without avail, for he was dead.

The contentions of the plaintiff in error are: (1) That Kelley's injury and death did not arise out of and in the course of his employment by the Pittsburgh Coal Company; (2) that the foreman, Hallock, had no authority to direct Kelley, on behalf of the coal company, to take the line for the assistance of the Goodrich Transit Company's steamers, and the coal company could not be bound by such directions; and (3) that the applicant failed to sustain the burden of proof which rested upon her to establish her claim.

At the time of his death Kelley had been employed by the coal company for five years, and he was necessarily acquainted with the nature of his employer's business. He was its night watchman and knew the extent of his duties. He must have known that the actual operation or navigation of the steamboats of any of his employer's customers was wholly foreign to his employer's business. As a night watchman for a coal company he could not infer that it was his duty to take or handle the line thrown from a passing steamer to assist it in turning the corner of Ogden slip merely because the company operating the steamer bought coal from his employer. Such work was not even incidental to the performance of his duties as a watchman.

Moreover, the work was done pursuant to an independent contract between the Goodrich Transit Company and Hallock. The coal company was not a party to that contract nor does it appear that it had any knowledge of or acquiesced in the arrangement. To perform the service it was necessary to leave the premises of the coal company and to enter upon the dock of the Coated Board Company. The check in payment of the work came directly to Hallock from the Goodrich Transit Company. When Kelley did the work Hallock endorsed and delivered the check to Kelley. It was compensation for service rendered a third party and was wholly separate and distinct from the wages paid to Kelley as night watchman. The Pittsburgh Coal Company was a stranger to the transaction, and when Kelley rendered the service for the Goodrich Transit Company on the dock of the Coated Board Company he was outside of the scope of his employment by the coal company. The Workmen's Compensation act requires compensation to be paid only for accidents which arise out of and in the course of the injured person's employment. There is no liability for injuries to a workman unless he is at the time of the injury engaged in the performance of some duty for which he was employed, and if he voluntarily and without his employer's direction or acquiescence undertakes work for which he was not employed and is injured while so engaged, he is not, as to such work, within the protection of the Compensation act. *Henry* v. *Industrial Com.* 293 Ill. 491; *Everett Hat Co.* v. *Industrial Com.* 305 id. 564; *Lumaghi Coal Co.* v. *Industrial Com.* 318 id. 151; *United States Fuel Co.* v. *Industrial Com.* 310 id. 85; *Terminal Railroad Ass'n* v. *Industrial Com.* 309 id. 203; *United Disposal Co.* v. *Industrial Com.* 291 id. 480; *Central Garage* v. *Industrial Com.* 286 id. 291; *Nelson Construction Co.* v. *Industrial Com.* 286 id. 632; *International Harvester Co.* v. *Industrial Board,* 282 id. 489; *Dietzen Co.* v. *Industrial Board,* 279 id. 11.

The evidence fails to show that the Pittsburgh Coal Company authorized Hallock to make any arrangement with the Goodrich Transit Company to serve its steamers in passing through Ogden slip. The fact that Hallock was foreman gave him no implied authority to enter into an arrangement with the Goodrich Transit Company for the rendition of a service beyond the sphere of his employment with the coal company. Such an implication could only be based upon facts for which the coal company was responsible, and no such facts appear. The exercise of an agent's authority, however broad it may be, must be confined to the scope of the business which is conducted. (1 Mechem on Agency,—2d ed.—sec. 981; 2 Corpus Juris, 644.) In making the arrangement with the Goodrich Transit Company Hallock did not act as the agent of the coal company. He had no authority for any such purpose and he acted in his own behalf. Lacking authority, Hallock's direction to Kelley to do the work for the Goodrich Transit Company in his stead could not bind Kelley's employer.

There was no contract, expressed or implied, between Kelley and his employer, the Pittsburgh Coal Company, which required the performance of the work in which he was engaged at the time of his death. Nor was it shown that Hallock, the foreman, had any authority to direct Kelley to render a service for another company wholly disconnected from and independent of his employment. The agreement between Hallock and the Goodrich Transit Company was purely voluntary on his part. It had no relation to his employment by the coal company. His arrangement with Kelley was of the same character. It follows that the applicant has not established her claim for compensation.

The judgment of the circuit court is reversed and the award is set aside.

*Judgment reversed and award set aside.*