(No. 18782.—

THE WASSON POCAHONTAS COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(TOMAS MAJKOWSKI, Defendant in Error.)

*Opinion filed October 25, 1928.*

CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, and CLAUD D. RABER, of counsel,) for plaintiff in error.

HENRY POLLENZ, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

This was a proceeding brought before the Industrial Commission of Illinois by Tomas Majkowski to recover compensation from plaintiff in error, the Wasson Pocahontas Coal Company, on account of accidental injuries sustained on February 17, 1926, which it is alleged arose out of and in the course of his employment by plaintiff in error. The arbitrator of the Industrial Commission found that the claimant was not entitled to compensation under the provisions of the act; that the injury sustained by him did not arise out of a risk connected with his employment, and that he at the time of the injury had left the sphere of his employment. On review the Industrial Commission set aside the decision of the arbitrator and entered an award of $7.94 per week for 13-1/7 weeks' temporary total disability, $7.94 per week during a period of 220 weeks for the loss of the right arm, that respondent furnish an artificial arm, and $231.50 for medical, surgical and hospital expenses. The award of the Industrial Commission was confirmed by the superior court of Cook county upon *certiorari*, and by leave of this court the record is now here for review on writ of error.

Plaintiff in error operates a coal yard at 6876 South Chicago avenue. The plant consists of an office, with a coal yard about 300 feet long behind it. Two lines of railroad tracks enter this yard—a high or elevated line, which is about 75 or 100 feet long, and a low line, which is built level with the railroad tracks. These tracks connect with the New York Central Lines and over them car-loads of coal are received into the yard. Cars coming in on the high line are dumped into bins or hoppers underneath the track, while cars coming in on the low line are shoveled out into the yard. Deliveries received from the railroad company are in charge of the yard foreman, Saner. He inquired some time before noon each day at the railway office,

which was two blocks away, as to car arrivals. There was no object in inquiring any earlier, because the New York Central never switched plaintiff in error's cars of coal till three o'clock in the afternoon. Plaintiff in error sells and delivers this coal in and about the city of Chicago, and for that purpose employs weekly-paid drivers, who drive delivery trucks and dump-wagons. For the purpose of carrying coal in off the street men are sent along with the drivers, who are paid so much a load by the company for their services. This work is called "hiking coal" and those who do it "hikers." These hikers come to the coal yard in varying numbers. If there are any loads to go out the shipping clerk directs the hikers to go out on them. If there is nothing for them they go home. If they wish they can wait around on the chance that there may be something for them to do later. They are not paid for waiting and come and go as they wish. At the end of each day they present their tickets at the office and are paid so much per load. Anyone not presenting his ticket before the office closes at eight o'clock P. M. receives his pay the following morning. Saner, the yard foreman, had two men employed on a weekly basis for work shoveling coal out of cars on the low line into the yard. Occasionally he needed extra help for this work. At such times he, as yard foreman, hired hikers for that purpose. The hikers liked this work because they could make more money at it than at hiking coal. Tomas Majkowski, the claimant here, had for several years obtained work from time to time during the winter months with plaintiff in error as a coal hiker. On the morning of the accident he appeared at the office at about seven o'clock. Having worked the previous day and not called for his pay before eight o'clock P. M. he was given his pay envelope. He also learned there was no work for him then, as all the trucks were out. Thereafter he and another hiker, Kovic, went down the track to the New York Central switching yards. While there, between Sixty-fourth and Sixty-fifth

streets, at about nine o'clock, two hours after he had presented himself at the coal yard office, he was run down by a New York Central train, resulting in the injury for which this claim was filed.

The claimant testified that he went to the coal yard about seven o'clock on the morning in question and got his pay for work which he had done the day before; that he saw the shipping clerk and asked if he had any work for him; that the shipping clerk said, "You wait, for this first truck is gone; you wait; me got some car lump; you go track see and come back and tell me;" that he told him where to go to look for the car and come back again to the office; that he and his partner went out to see if they could see any coal on the tracks; that he looked up the track to see if there were any cars and didn't see any there; that he then climbed up on the railroad track and walked north, crossing Sixty-seventh, Sixty-fifth, Sixty-fourth and South Park to a large railroad yard, where he found a car of coal for the Wasson Company; that he and his partner climbed up on the car; that it was seven or eight blocks from the Wasson coal office; that he then started to go back to the office; that he went to cross over the track to the other side, when a train backed down on him and he lost his arm; that it was about nine o'clock.

It was denied by the shipping clerk on duty that morning, and by others in the office, that any orders were given to the claimant to go and look for the cars of coal. Kovic, the claimant's partner, does not corroborate him as to his conversation with the shipping clerk, but testified: "Tom didn't have any conversation in the office; he stay out of the office." He also testified that he asked the shipping clerk for work for himself and the claimant and was told that the trucks were gone and that they should wait and take a chance; that there was supposed to be a car of lump out there; that witness said, "I go see it," to which no re-

ply was made, and that he and claimant then went out to hunt for the car of coal.

Assuming that claimant's statement is true that he was directed to go to see if there was any coal in the yards, that direction did not create any liability on the part of the company for his injury. He was not then in the employ of the company and was not being paid by the company, nor did he expect pay for the time spent looking for the car. Even if he did find a car of coal, he would not be in the employ of the company until such time as the car was transferred to the coal company's yard and he was hired to help unload it. The Workmen's Compensation act requires compensation to be paid only for accidents which arise out of and in the course of the injured person's employment. There is no liability for injuries to a workman unless he is at the time of the injury engaged in the performance of the duty for which he is employed. *Pittsburgh Coal Co.* v. *Industrial Com.* 323 Ill. 54.

The judgment of the superior court of Cook county is reversed.

*Judgment reversed.*